**State's Motion for Rehearing Granted, Appellant's Motion for Rehearing Denied, Affirmed, and Majority Opinion and Concurring and Dissenting Opinion on Rehearing filed October 11, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-16-00658-CR

### JERMAINE EARVIN JOHNSON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1444554**

## MAJORITY OPINION ON REHEARING

The court denies appellant's motion for rehearing. A majority of the court grants the State's motion for rehearing. The court's opinion and judgment issued March 27, 2018 is withdrawn and the following opinion is issued in its stead.

Appellant Jermaine Earvin Johnson challenges his conviction for aggravated robbery, asserting that the trial court lacked jurisdiction over his case because a

grand jury impaneled by a district court other than the trial court presented the indictment to the trial court. Appellant also contends that article 102.004(a) of the Texas Code of Criminal Procedure, which governs jury fees paid by convicted defendants, violates the separation-of-powers clause of the Texas Constitution. Finally, appellant urges that the imposition of a jury fee against those convicted by a jury violates the constitutional right of trial by jury.

We conclude, unanimously, that the trial court had jurisdiction over the case. All members of the panel join in section III.A of this opinion on rehearing. Regarding appellant's facial constitutional challenge to the jury fee, however, a majority of the court on rehearing holds that article 102.004(a) is not facially unconstitutional on the grounds that it violates the separation-of-powers clause. As to appellant's third issue, a majority holds that the imposition of this jury fee does not violate the constitutional right to a trial by jury. Accordingly, the trial court's judgment is affirmed.

## I.    Background

The grand jury for the 209th District Court of Harris County presented an indictment charging appellant with aggravated robbery. That indictment was filed in the 263rd District Court of Harris County, the court in which the State's complaint had been filed. The judge of the 263rd District Court conducted a jury trial of the charged offense. The jury found appellant guilty as charged and assessed punishment at 27 years' confinement. The trial court ordered appellant to pay court costs. The bill of costs, which totaled $334, included a $40 "jury fee" charge.

## II.    Issues

Appellant raises three issues in this court:

(1) The 263rd District Court of Harris County did not have jurisdiction over appellant's case because the grand jury for the 209th District Court of Harris County presented the indictment to the 263rd District Court, and that presentment does not vest jurisdiction in the 263rd District Court.

(2) The jury fee is unconstitutional because having the trial court collect the fee makes the court a tax gatherer, which violates the Texas Constitution's separation-of-powers clause.

(3) The jury fee violates the accused's right to a jury trial enshrined in the Texas Bill of Rights.

## III.    Analysis

### A.    The Trial Court's Jurisdiction

In his first issue, appellant argues that the trial court, the 263rd District Court, lacked jurisdiction over this case because a grand jury impaneled by the 209th District Court presented the underlying indictment to the 263rd District Court. Appellant contends that the grand jury for the 209th District Court should present indictments only to the 209th District Court and that this grand jury had no authority to present an indictment to the 263rd District Court. Appellant argues that because the grand jury for the 209th District Court did not present the indictment to the 209th District Court, that court lacked jurisdiction over the indictment, and because the grand jury had no authority to present the indictment to the 263rd District Court, that court lacked jurisdiction. According to appellant, if a grand jury impaneled by one district court presents an indictment to a different district court, then no district court has jurisdiction over the indictment. Appellant concedes that if the grand jury had presented the indictment to the 209th District Court, that court would have had jurisdiction over the indictment and that court

3

would have had authority to transfer the case to the 263rd District Court. Appellant notes that the record does not reflect any transfer in this case.

The Texas Code of Criminal Procedure sets forth the organization and duties of a grand jury. *See* Tex. Code Crim. Proc. arts. 19.01-20.22. A trial court forms, impanels, and empowers a grand jury to inquire into indictable offenses, including aggravated robbery. *See id.* art. 20.09 ("The grand jury shall inquire into all offenses liable to indictment of which any member may have knowledge, or of which they shall be informed by the attorney representing the State, or any other credible person."); *Ex parte Edone*, 740 S.W.2d 446, 448 (Tex. Crim. App. 1987) ("Once formed and impaneled by the district judge, the grand jury shall inquire into all offenses liable to indictment." (internal quotations omitted)). Because a grand jury's deliberations are secret, it retains a "separate and independent nature from the court." *Ex parte Edone*, 740 S.W.2d at 448.

After hearing testimony, a grand jury votes as to the presentment of an indictment. *See* Tex. Code Crim. Proc. art. 20.19 ("After all the testimony which is accessible to the grand jury shall have been given in respect to any criminal accusation, the vote shall be taken as to the presentment of an indictment . . . ."); *Ex parte Edone*, 740 S.W.2d at 448. An indictment is "a written instrument presented to a court by a grand jury charging a person with the commission of an offense." Tex. Const. art. V, § 12(b); *see also* Tex. Code Crim. Proc. art. 21.02 (setting out requirements of indictment).

"[I]f nine members concur in finding the bill," the State prepares the indictment and the grand jury foreman signs it and delivers it to the judge or the clerk of the court. *See* Tex. Code Crim. Proc. arts. 20.19-.21; *Bourque v. State*, 156 S.W.3d 675, 678 (Tex. App.—Dallas 2005, pet. ref'd). An indictment is considered "'presented' when it has been duly acted upon by the grand jury and

4

received by the court." Tex. Code Crim. Proc. art. 12.06. Thus, presentment occurs when an indictment is delivered to either the judge or the clerk of the court. *See* Tex. Code Crim. Proc. art. 20.21; *State v. Dotson*, 224 S.W.3d 199, 204 (Tex. Crim. App. 2007).

The district clerk for each county "is *the* clerk of the court for all the district courts in that county." *Henderson v. State*, 526 S.W.3d 818, 820 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (internal quotations omitted). If a signed indictment features an original file stamp of the district clerk's office, this file stamp is strong evidence that a returned indictment was "presented" to the court clerk within the meaning of article 20.21. *Dotson*, 224 S.W.3d at 204 (because indictment "bears an original file stamp, that fact convincingly shows the presentment requirement was satisfied"). Once an indictment is presented, jurisdiction vests with the trial court. Tex. Const. art. V, § 12(b); *Dotson*, 224 S.W.3d at 204; *Cook v. State*, 902 S.W.2d 471, 476 (Tex. Crim. App. 1995).

All district courts in Harris County share the same original jurisdiction in felony criminal cases. *See* Tex. Code Crim. Proc. art. 4.05; Tex. Gov't Code § 74.094; *Saldivar v. State*, 542 S.W.3d 43, 45 (Tex. App.—Houston [14th Dist.] 2017, pet. filed). This shared administration allows district judges to "adopt rules governing the filing and numbering of cases, the assignment of cases for trial, and the distribution of the work of the courts as in their discretion they consider necessary or desirable for the orderly dispatch of the business of the courts." Tex. Gov't Code § 24.024; *see also Saldivar*, 542 S.W.3d at 45.

Thus, in multi-court counties, such as Harris County, although a specific district court may impanel a grand jury, it does not necessarily follow that all cases considered by that court's grand jury are assigned to that court. *See Henderson*, 526 S.W.3d at 820; *Davis v. State*, 519 S.W.3d 251, 255 (Tex. App.—Houston [1st

5

Dist.] 2017, pet. ref'd); ("If a grand jury in one district court returns an indictment in a case, the case nevertheless may be then assigned to any district court within the same county."); *Bourque*, 156 S.W.3d at 678; *see also Tamez v. State*, 27 S.W.3d 668, 670 n.1 (Tex. App.—Waco 2000, pet. ref'd) (noting "the judges of the Harris County district courts exercising criminal jurisdiction have adopted a procedure by which indictments are filed in each court on a rotating basis without reference to the court which empaneled the grand jury presenting the indictments"). In other words, one court may impanel a grand jury, and if an indictment is presented, the case may be filed in another court of competent jurisdiction within the same county. *See Saldivar*, 542 S.W.3d at 45-46; *Davis*, 519 S.W.3d at 255.

The 209th and 263rd District Courts, both district courts in Harris County, Texas, share the same clerk, i.e., the Harris County District Clerk, and both courts have original jurisdiction in felony criminal cases. The State filed in the 263rd District Court a complaint, alleging that "on or about October 9, 2014," appellant "did then and there unlawfully[,] while in the course of committing theft of property owned by [the complainant], and with intent to obtain and maintain control of the property, intentionally and knowingly threaten and place [the complainant] in fear of imminent bodily injury and death," and appellant "did then and there use and exhibit a deadly weapon, namely, a firearm." (emphasis omitted.) The grand jury returned a true bill of indictment concerning the same conduct. *See* Tex. Const. art. V, § 12(b); Tex. Code Crim. Proc. art. 21.02 (setting out requirements of indictment); *State v. Smith*, 957 S.W.2d 163, 164-65 (Tex. App.—Austin 1997, no pet.) ("The constitutional requisites for an indictment . . . are satisfied by a written instrument accusing a person of the commission of a criminal offense with enough clarity and specificity to identify the penal statute

under which the State intends to prosecute . . . .").  That indictment was presented to the Harris County District Clerk, as demonstrated by the clerk's original file stamp, and filed in the 263rd District Court, the trial court in which the State's complaint was filed.  *See Davis*, 519 S.W.3d at 254 (noting that after the grand jury votes concerning presentment of an indictment, the State files in any court that has jurisdiction over the case).

Appellant asserts that two cases—*Ex parte Dobbs*, 978 S.W.2d 959 (Tex. Crim. App. 1997) and *Lytle v. Halff*, 12 S.W. 610 (Tex. 1889)—support his contention that the trial court did not acquire jurisdiction over his case.  Neither *Ex parte Dobbs* nor *Lytle* involve the issue in today's case.  *See Ex parte Dobbs*, 978 S.W.2d at 959-60; *Lytle*, 12 S.W. at 139.

Appellant argues that a grand jury serves a particular court and that a grand jury impaneled by one district court cannot present an indictment to a different district court.  This court has rejected that argument before, as has the First Court of Appeals.  *See Saldivar*, 542 S.W.3d at 45-46; *Matthews v. State*, 530 S.W.3d 744, 746 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd); *Henderson*, 526 S.W.3d at 819-21.  Both courts have held that a trial court is not deprived of jurisdiction over a criminal defendant in circumstances such as those presented in today's case.  *See Saldivar*, 542 S.W.3d at 46; *Matthews*, 530 S.W.3d at 746; *Henderson*, 526 S.W.3d at 819–21.  At best, appellant's arguments present a non-jurisdictional, procedural issue related to appellant's indictment.  *See Matthews*, 530 S.W.3d at 746; *Henderson*, 526 S.W.3d at 819-21.  And, although a jurisdictional defect in an indictment may be challenged for the first time on appeal, a procedural deficiency to an indictment may not.  *See Matthews*, 530 S.W.3d at 746; *Henderson*, 526 S.W.3d at 819-21.  In today's case, appellant did not raise this complaint in the trial court.

Accordingly, we hold that the trial court had jurisdiction over this case and that appellant waived any non-jurisdictional issue related to the indictment by failing to make the complaint in the trial court. *See Matthews*, 530 S.W.3d at 746; *Henderson*, 526 S.W.3d at 819-21. We overrule appellant's first issue.

## B.  Constitutionality of Texas Code of Criminal Procedure Article 102.004(a)—Separation of Powers

In his second issue, appellant asserts that the jury-fee statute violates the Texas Constitution's separation-of-powers provision because the jury fee constitutes an impermissible tax collected by the judiciary, rather than a legitimate court cost. Article 102.004(a) imposes a $40 fee on a defendant convicted by a jury in a constitutional county court, a county court at law, or a district court. *See* Tex. Code Crim. Proc. art. 102.004(a). Appellant's argument amounts to a facial challenge to the constitutionality of article 102.004(a). Appellant contends that article 102.004(a) violates the separation-of-powers provision because the statute does not direct that the funds collected be expended for something that is a legitimate criminal-justice purpose. The parties have not cited and research has not revealed any case addressing this issue.

Before addressing the constitutional issues, we note that appellant did not raise these complaints in the trial court by objecting to the imposition of court costs. However, the record shows the court assessed the bill of costs the same date as the judgment, but the bill of costs was not filed until three days after the judgment. An appellant may raise complaints about court costs, including complaints about the constitutionality of the statutes authorizing those costs, for the first time on appeal when they are not imposed in open court. *See Johnson v. State*, 537 S.W.3d 929, 929 (Tex. Crim. App. 2017) (per curiam); *London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016). Accordingly, preservation of these

complaints was not required, and we turn to the merits of appellant's constitutional challenges.

### 1. *Framework and Standard of Review*

We review the constitutionality of a criminal statute de novo as a question of law. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). When reviewing the constitutionality of a statute, we presume that the statute is valid and that the legislature was neither unreasonable nor arbitrary in enacting it. *See Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002); *Eugene v. State*, 528 S.W.3d 245, 250-51 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also* Tex. Gov't Code § 311.021 (noting that courts presume "compliance" with Texas and United States Constitutions). We must uphold the statute if we can apply a reasonable construction that will render it constitutional. *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. [Panel Op.] 1979). We make every reasonable presumption in favor of the statute's constitutionality unless the contrary is clearly shown. *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015). The party challenging the statute has the burden to establish its unconstitutionality. *Id.*; *Rodriguez*, 93 S.W.3d at 69.

Challenges to the constitutionality of a statute may be either facial attacks or as-applied challenges. A facial challenge is an attack on a statute itself as opposed to a particular application. *Peraza*, 467 S.W.3d at 514. In such a challenge, the challenger must establish that "no set of circumstances exists under which the statute would be valid." *Id.*; *see also State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013) (the party asserting a facial challenge "must establish that the statute always operates unconstitutionally in all possible circumstances."). Under the proper facial-challenge analysis regarding court costs, courts consider only applications of a statute which the statute actually authorizes or prohibits, not how

or where the collected fees might actually be spent. *See Peraza*, 467 S.W.3d at 515. Because a facial challenge attacks a statute's validity in all circumstances, it is "the most difficult challenge to mount successfully." *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992).

In contrast, in an "as applied" challenge to the constitutionality of a statute, the challenger asserts that a statute, although generally constitutional, operates unconstitutionally as to the claimant because of his circumstances. *Gillenwaters v. State*, 205 S.W.3d 534, 536 n.3 (Tex. Crim. App. 2006). We must evaluate the statute as it has been applied against the challenger. *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011); *Eugene v. State*, 528 S.W.3d 245, 249 (Tex. App.—Houston [14th Dist.] 2017, no pet.). As the scope of such a challenge is necessarily narrow, we do not entertain hypothetical claims or consider the potential impact of the statute on anyone other than the challenger. *Eugene*, 528 S.W.3d at 249-50 (citing *Lykos*, 330 S.W.3d at 910).

2. *Separation of Powers*

The Texas Constitution expressly guarantees the separation of powers among the three branches of government. Tex. Const. art. II, § 1; *Salinas v. State*, 523 S.W.3d 103, 106 (Tex. Crim. App. 2017). Article II, section 1 of the Texas Constitution states:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

Tex. Const. art. II, § 1. This section ensures that the powers granted to one governmental branch may be exercised only by that branch, to the exclusion of the other branches. *Ex parte Lo*, 424 S.W.3d at 28. When one branch of government assumes or is delegated a power more properly attached to another branch, that assumption or delegation of power violates the separation-of-powers provision. *Salinas*, 523 S.W.3d at 106-07. If a statute turns the courts into tax gatherers, then the statute delegates to the courts a power more properly attached to the executive branch. *Id.* at 107.

Precedent from the Texas Court of Criminal Appeals controls our analysis of appellant's constitutional challenge. In *Peraza*, the high court analyzed the facial constitutionality of a $250 "DNA Record Fee" collected under Texas Code of Criminal Procedure article 102.020(a). *Peraza*, 467 S.W.3d at 511. Article 102.020(h) directs that 35 percent of the collected funds be allocated to the state highway fund, and 65 percent be allocated to the "criminal justice planning account in the general revenue fund." *Id*. The court examined whether the appellant had met his burden of establishing that it is not possible for article 102.020 to operate constitutionally under any circumstance. *Id*. at 515.

Before analyzing the statute in question, the court revisited the standard for determining whether a court cost is constitutionally valid. *Id*. at 516. The then-existing test held a cost invalid when "neither necessary nor incidental to the trial of a criminal case." *Id*. at 515 (quoting *Ex Parte Carson*, 159 S.W.2d 126, 130 (Tex. Crim. App. 1942) (op. on reh'g)). The court concluded that costs "necessary and incidental to criminal trials" was "too limiting" a test for constitutional validity because it ignored a vast array of other legitimate costs neither "necessary" nor "incidental" to criminal trials but which are nonetheless "directly related to the recoupment of costs of judicial resources expended in connection with the

11

prosecution of criminal cases within our criminal justice system." *Id.* at 517. Thus, the *Peraza* court articulated a new, broader standard, holding that, "if the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for legitimate criminal justice purposes, then the statute allows for a constitutional application" and does not violate the separation-of-powers provision. *Id.* A "criminal justice purpose," the court stated, is one that "relates to the administration of our criminal justice system" and should be evaluated on a statute-by-statute/case-by-case basis. *Id.* at 517-18. Under *Peraza*'s new standard, court-cost statutes under which a court recoups costs that are necessary and incidental to a criminal trial remain constitutionally valid. *Id.* Also passing constitutional muster are those court-cost statutes providing for an allocation of such costs to be expended for not only criminal trials but any "legitimate criminal justice purpose." *Id.* at 517.

After establishing this new test, the *Peraza* court proceeded to apply that test to determine whether the appellant met his burden of establishing that it was not possible for the statute at issue to operate constitutionally under any circumstance. *Id.* at 519-21. As to the portion of the fee allocated to the criminal justice planning account, the court held that the appellant did not meet his burden because the statute allowed for constitutional applications. As the court reasoned, "a portion of the DNA record fee collected is deposited into the criminal justice planning account, and the criminal justice planning account is statutorily required to reimburse monies spent collecting DNA specimens from offenders charged with certain offenses." *Id.* at 519. "The statutory scheme," the court continued, "allocating these resources to the criminal justice planning account are required, via interconnected statutory provisions, to be expended for legitimate criminal justice purposes. Therefore, they do not constitute a tax and thus do not violate the

12

separation of powers clause." *Id.* As to the portion of the fee allocated to the state highway fund, the court concluded that the statutory directives at issue mandated that the fees be "used to defray the costs associated with collecting, storing, and testing DNA samples," which, likewise, is a legitimate criminal justice purpose. *Id.* at 520-21. Thus, the appellant failed to meet his burden of showing that the legislative allocation of the fees allowed no possible constitutional use in all circumstances. *Id.* at 521.

In upholding the statute, the *Peraza* court explained why the court of appeals erred in holding that the appellant met his burden on a facial challenge. The court of appeals had reasoned that, even if the fee reimbursed the Department of Public Safety for DNA-related expenses, the fee was nevertheless unconstitutional because "the criminal justice planning account funds other projects that are not related to managing the statewide DNA database." *Id.* at 519. The *Peraza* court rejected this line of thinking because it would allow a party bringing a facial challenge to invalidate every application of a court-cost statute by showing one possible impermissible application. *See id.* As the *Peraza* court made clear, however, an appellant will not prevail on a facial challenge by showing merely that some applications benefit activities or persons unrelated to legitimate criminal justice purposes, but rather an appellant must show that the statute in question operates unconstitutionally in all possible circumstances.

Two years later, in *Salinas v. State*, 523 S.W.3d 103, 106-10 (Tex. Crim. App. 2017), the Court of Criminal Appeals addressed the facial constitutionality of a statute requiring every convicted felon to pay $133 as part of a "Consolidated Court Cost" fee. *See* Tex. Loc. Gov't Code § 133.102. The legislature allocated portions of the fee to two accounts at issue: the "comprehensive rehabilitation" account and the "abused children's counseling" account. *Salinas*, 523 S.W.3d at

13

107. The question was whether the two accounts "meet the requirement that the relevant statutes provide for an allocation of funds 'to be expended for a legitimate criminal justice purpose.'" *Id*.

Turning first to the comprehensive rehabilitation account, the court noted that the account is a general revenue fund dedicated to provide rehabilitation services—administered within the authority of the Health and Human Services Commission—to eligible individuals under vocational or other programs established to provide rehabilitation services. *Id*. at 107-08. Examining the relevant statutes, the *Salinas* court concluded that the "uses to which the money is directed do not relate to the criminal justice system." *Id*. at 109. The court reached this conclusion because "[n]o criminal justice purpose is even mentioned" in the statutory text. *Id*. at 108. "*Nothing* in the statute that describes the functions of the HHSC restricts its mission to, or even *mentions*, *anything* relating to criminal justice." *Id*. (emphasis added). Because the legislative directives at issue in *Salinas* did not constitute *any* legitimate criminal justice purpose, the court held that the fee operates unconstitutionally every time the fee is collected and thus was facially invalid. *See id*. at 109 & n.26.[1] Similarly, with respect to the portion of the fees directed to the abused children's counseling account, the court found these amounts were allocated to the general revenue fund, which does not qualify as a legitimate criminal justice purpose. *Id*. at 110. Thus, the import of *Salinas*'s holding was that the appellant met his burden of showing that the statute in question operates unconstitutionally in all possible circumstances. *Cf. Peraza*, 456 S.W.3d at 515, 516, 519. Viewing the statutes at issue in *Salinas*, the legislature

---

[1] Since *Salinas*, the Court of Criminal Appeals has reiterated that the portion of the "Consolidated Court Cost" fee that allocates funds received from the fee to the "comprehensive rehabilitation" account is unconstitutional. *See Johnson v. State*, 537 S.W.3d 929 (Tex. Crim. App. 2017).

had not directed that the fees be used for anything constituting a legitimate criminal justice purpose.

With this framework in mind, we turn to the statute at issue here. Article 102.004 provides:

(a) A defendant convicted by a jury in a trial before a justice or municipal court shall pay a jury fee of $3. A defendant in a justice or municipal court who requests a trial by jury and who withdraws the request not earlier than 24 hours before the time of trial shall pay a jury fee of $3, if the defendant is convicted of the offense or final disposition of the defendant's case is deferred. A defendant convicted by a jury in a county court, a county court at law, or a district court shall pay a jury fee of $40.

(b) If two or more defendants are tried jointly in a justice or municipal court, only one jury fee of $3 may be imposed under this article. If the defendants sever and are tried separately, each defendant convicted shall pay a jury fee.

(c) In this article, "conviction" has the meaning assigned by Section 133.101, Local Government Code.

Tex. Code Crim. Proc. art. 102.004. Article 102.004 does not allocate the jury fee to any specific fund, nor does the statute direct how the funds collected are to be expended. *See id.*

On original submission, appellant asserted that the funds collected under this statute are deposited into the county's general fund, and the State agreed with appellant. On rehearing, the State maintains that the funds collected are deposited into the fund referenced in Local Government Code section 113.004(b)(1). *See* Tex. Loc. Gov't Code § 113.004. Appellant has conceded that the funds collected are not deposited into the county's general fund. According to the State, Local Government Code section 113.004 is an "interconnected" statute, under which the legislature directs that jury fees collected under article 102.004 be spent for a

15

legitimate criminal justice purpose.   Local Government Code section 113.004
provides:

> (a) The county treasurer shall divide the funds received by the treasurer's office into three classes.  The treasurer shall appropriate the money in each class of funds to the payment of the claims registered in the corresponding class of claims.
>
> (b) The classes of funds consist of:
>
>> (1) jury fees, money received from the sale of estrays, and occupation taxes;
>>
>> (2) money received under the provisions of a road and bridge law, including penalties recovered from railroads for the failure to repair crossings, and all fines and forfeitures; and
>>
>> (3) other money received by the treasurer's office that is not otherwise appropriated by this section or by the commissioners court.
>
> (c) The commissioners court, as it considers proper, may require other accounts to be kept, creating other classes of funds.  The court may require scrip to be issued against those accounts and to be registered accordingly.
>
> (d) The commissioners court by order may transfer money on hand from one fund to another as it considers necessary, but amounts that belong to the first class of funds may not be transferred from the payment of claims registered in that class unless there is an excess amount in that class.

*Id*.

Section 113.004 directs that the county treasurer shall divide the funds received by the treasurer's office into three classes.  *See id*. § 113.004(a).  The treasurer must appropriate the money in each fund to the payment of claims registered in the class of claims corresponding to the fund.  *See id*.  The statute requires the treasurer to put jury fees the treasurer's office receives into the first fund. *See id*. § 113.004(b).  The commissioners court may transfer money on hand from one fund to another as it considers necessary, but amounts in the first fund

16

may not be transferred from the payment of claims registered in that fund unless there is an excess amount in that class. *See id*. § 113.004(d).

The critical language in section 113.004 is the directive that "[t]he treasurer shall appropriate the money in each class of funds to the payment of the claims registered in the corresponding class of claims." This directive means that the $40 fee collected from defendants convicted by a jury in district court under article 102.004(a) must be deposited in the first fund under section 113.004(b)(1); in turn, the monies in the first fund may be spent only on expenses relating to the first fund, which expressly includes juries.[2] These expenses would include those pertaining to criminal juries, which is unquestionably related "to the administration of our criminal justice system" and, therefore, a legitimate criminal justice purpose. *Peraza*, 467 S.W.3d at 518. Thus, section 113.004 not only allows but mandates that jury fees collected under article 102.004 be used for some legitimate criminal justice purposes. We therefore agree with the State that appellant has not met his burden to show that the jury fees collected under the statute cannot be used for legitimate criminal justice purposes in all possible circumstances. *See id.* at 516.

Finally, contrary to appellant's position, we do not construe *Salinas* as changing the test courts apply to determine whether a statute mandating the collection of fees in a criminal case is facially unconstitutional under the separation-of-powers clause. Statutes providing for the collection of fees in a

---

[2] The State asserts on rehearing that the jury fees paid under article 102.004 are funds received by the treasurer's office and placed in the first fund under Local Government Code section 113.004. *See* Tex. Loc. Gov't Code § 113.004 (a),(b). The State refers to the first fund as the county "jury fund" and cites Government Code section 61.001(b) for the proposition that the reimbursement of juror expenses under section 61.001(a) must be paid out of the county's jury fund. *See* Tex. Gov't Code § 61.001(a), (b). In his responsive briefing on rehearing, appellant does not dispute these assertions.

17

criminal case do not violate the separation-of-powers clause if they provide for apportioning the fees to be spent for "legitimate criminal justice purposes." *Peraza*, 467 S.W.3d at 518. A criminal justice purpose pertains "to the administration of our criminal justice system." *Id.* Moreover, *Salinas* did not alter or lessen the burden imposed on an appellant mounting a facial challenge, nor did *Salinas* suggest that one could meet the burden by showing the possibility of some unconstitutional applications of the collected funds. *See Hawkins v. State*, 551 S.W.3d 764, 767 (Tex. App.—Fort Worth 2017, pet. ref'd) ("The *Salinas* court did not change the test we use to determine whether a statute requiring the collection of fees in a criminal case violates the Separation of Powers clause."). For purposes of the present matter, the principal difference between *Peraza* and *Salinas* is that the challenger failed to meet his burden in the former case, but met it in the latter case. The present matter is like *Peraza* and not *Salinas* because appellant failed to establish no possible constitutional applications of the jury fee. This interpretation of *Peraza* and *Salinas* favors a constitutional reading of the relevant statutes over an unconstitutional one. *See Peraza*, 467 S.W.3d at 518.[3]

---

[3] On rehearing, the State argues that whether the relevant statutes specifically direct that the funds be spent for criminal justice purposes is not dispositive because the jury fees at issue here clearly reimburse costs incurred in the past related to criminal jury trials. According to the State, under *Peraza*, the fees are "directly related to the recoupment of costs of judicial resources expended in connection with the prosecution of criminal cases." *Peraza*, 467 S.W.3d at 517. The State posits that we may draw a distinction between certain types of court costs depending upon their intended uses. Some court costs reimburse expenses already incurred in a criminal prosecution; other court costs are to be expended to offset certain future criminal-justice costs. As the State suggests, we may reasonably read *Salinas*'s requirements as inapplicable to those costs that reimburse past expenses. If that is so, the State argues, then the jury fee is constitutional regardless whether the legislature has directed how the funds collected are to be spent. We need not address this point because we conclude that appellant has failed to meet his burden on a facial challenge even assuming *Salinas* applies.

18

For these reasons, we overrule appellant's challenge to the constitutionality of Texas Code of Criminal Procedure article 102.004 under the separation-of-powers clause.

## C. Constitutionality of Texas Code of Criminal Procedure Article 102.004(a)—Right to Trial by Jury

In his third issue, appellant asserts that this statutory jury fee also violates the Texas constitutional right to a trial by jury. Article I, section 15 of the Texas Constitution provides, "The right of trial by jury shall remain inviolate." Tex. Const. art. I, § 15. Appellant first asserts that the imposition of the jury fee on convicted defendants violates the constitutional right to trial by jury because defendants who exercise their right to a jury trial are "charged for that exercise" if found guilty. He contends the statute is both facially unconstitutional and unconstitutional as applied to indigent defendants. Appellant acknowledges that no Texas authority supports his position.

Appellant asserts that the jury fee is unconstitutional on its face because "such a fee effectively serves to dissuade defendants from exercising their constitutional right to a jury trial." Appellant, however, fails to explain how the imposition of a fee *after* conviction prevents defendants from exercising their right to trial by jury. *See, e.g.*, *Peraza*, 467 S.W.3d at 514 (prevailing on a facial challenge requires party to establish that statute always operates unconstitutionally). Appellant was not dissuaded from exercising his right to a jury trial in today's case by the potential imposition of this fee, and he does not argue otherwise. *Cf. Fuller v. Oregon*, 417 U.S. 40, 51-53 (1974) (concluding that Oregon's recoupment statute requiring defendants convicted of criminal offense to repay legal defense costs if person subsequently acquires means to bear these costs does not "chill" constitutional right to counsel); *Eugene*, 528 S.W.3d at 250-51

(explaining that imposing fees for summoning witnesses against indigent defendant did not violate his constitutional rights to compulsory process or confrontation; fee was imposed only after conviction and in no way prevented defendant from exercising rights in the first instance).  Further, none of the cases from other jurisdictions cited by appellant hold similar fee-based statutes to be facially unconstitutional.[4]

Contrary to appellant's position, numerous rights guaranteed by the Texas constitution may come at a cost to the person exercising them.  For example, as the State notes, the right to keep and bear arms[5] is not the right to free weaponry, nor is the right of a citizen to publish his opinions on any subject[6] the right to have something printed for free.  And the United States Supreme Court has concluded that a convicted defendant may be held liable for the reasonable court costs of his or her prosecution.  *See Fuller*, 417 U.S. at 51-53.  We conclude that imposition of

---

[4] Appellant relies on cases in which courts imposed the actual expenses incurred in providing a jury trial for the defendant, as opposed to the imposition of a statutory jury fee as we have here.  *See State v. Hanson*, 92 Idaho 665, 669, 448 P.2d 758, 761-62 (1968) (remanding for determination of what portion of costs associated with "attendance of jurors" were included in costs assessed against defendant; "fees and expenses of jurors must be excluded" from costs imposed); *Arnold v. State*, 76 Wyo. 445, 465, 468, 306 P.2d 368, 376-78 (1957) (concluding that "taxing, as costs of prosecution, the mileage and per diem paid to all jurors on the jury panel and the amounts paid for the services of the court bailiffs, was erroneous"); *People v. Kennedy*, 58 Mich. 372, 377, 25 N.W. 318, 320 (1885) (concluding that "no authority" existed to add per diem of jurors to fine and costs assessed against defendant for misdemeanor conviction); *People v. Hope*, 297 Mich. 115, 118, 297 N.W. 206, 208 (1941) (actual cost of paying jurors for jury service were not taxable against defendant).  Appellant also relies on a case from the New Hampshire Supreme Court invalidating, on equal protection grounds, a superior court rule requiring payment of a jury fee before misdemeanor cases could be transferred from a district or municipal court to the superior court.  *State v. Cushing*, 119 N.H. 147, 148, 399 A.2d 297, 298 (1979) (deciding that statute requiring payment of up-front jury fee only in certain criminal prosecutions violated equal protection principles).  *Cushing* does not apply to the present circumstances, as appellant has not challenged the jury fee on equal protection grounds.

[5] *See* Tex. Const. art. I, § 23.

[6] *See* Tex. Const. art. I § 8.

a jury fee on convicted defendants under article 102.004(a) does not violate the right to trial by jury under Texas Constitution article I, section 15.

Nor did the imposition of a jury fee on appellant in today's case violate his right to a jury trial. In fact, as explained above, appellant was not denied a jury trial because he was unable to afford one, nor does appellant make this claim.[7] *Cf. Eugene*, 528 S.W.3d at 250-51. Thus, appellant's as-applied challenge to this statute also fails.

For these reasons, appellant has not met his burden of establishing that imposition of the jury fee violates Texas Constitution article I, section 15, either facially or as applied to him. We therefore overrule appellant's third issue.

## Conclusion

Having overruled each of appellant's issues, we affirm the trial court's judgment.

/s/     Kevin Jewell
        Justice

Panel consists of Chief Justice Frost and Justices Boyce and Jewell (Frost, C.J., concurring and dissenting).

Publish — Tex. R. App. P. 47.2(b).

---

[7] This fact may explain why appellant attempts to bring an "as-applied" challenge to the imposition of the jury fee on behalf of "all indigent defendants." As explained above, the scope of an as-applied challenge is necessarily narrow; thus, we do not consider the potential impact of the statute on anyone other than the challenger. *Eugene*, 528 S.W.3d at 249-50.