

# NUMBER 13-18-00049-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

RANDALL TODD TOWNSEND,                                                      Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

**On appeal from the 220th District Court
of Hamilton County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Tijerina
Memorandum Opinion by Chief Justice Contreras**

Appellant Randall Todd Townsend appeals his convictions for retaliation, a third-degree felony, and fraudulent filing of a financing statement, a state jail felony. *See* TEX. PENAL CODE ANN. §§ 36.06(a)(1), 37.101. By five issues, appellant argues that: (1) the conviction for fraudulent filing of a financing statement must be vacated because of

double jeopardy; (2) the trial court erred when it failed to read its answer to the jury's question in open court; (3) the trial court assessed unconstitutional court costs; (4) court costs were incorrectly assessed twice because appellant was convicted of the two offenses in a single trial; and (5) the bill of costs incorrectly included a fine. Because we agree the two convictions violated the double jeopardy clause, we reverse the judgment of conviction for the fraudulent filing of a financing statement charge and render judgment of acquittal on that count. We affirm the retaliation judgment as modified.[1]

## I. BACKGROUND

In January 2017, appellant was indicted for two offenses: (1) filing a fraudulent financing statement in retaliation against a public servant and (2) filing of a fraudulent financing statement he knew was groundless or contained a materially false statement. *See id.* §§ 36.06(a)(1), 37.101. Appellant pleaded not guilty and elected to represent himself at trial.

At trial, the evidence showed that appellant attempted to donate toys to a day care center. Charlie Hall, the owner of the daycare center, told appellant she was not interested in any of the toys and asked him to leave. Appellant left the day care center, and Hall contacted the police. Justin Slone, a lieutenant with the Hamilton County Police Department, met with Hall, and Hall explained to him she did not want appellant to return to the daycare. Shortly thereafter, Slone found appellant in the parking lot of a church and approached him. Slone informed appellant that Hall did not want him to come back to her property and issued appellant a criminal trespass warning. Slone informed appellant that it was simply a warning not to go back to the property or otherwise criminal

---

[1] This appeal was transferred from the Tenth Court of Appeals in Waco pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001.

charges could be filed. Appellant did not understand the reason for the criminal trespass warning and refused to sign the warning citation. Subsequently, appellant protested the criminal trespass warning with the Chief of Police and later the City Council, but they declined to take any action.

On May 28, 2015, appellant filed a lawsuit pro se against the State of Texas, Hamilton County, the City of Hamilton, and multiple individuals, including Hall, the Chief of Police, and Slone. The defendants filed a motion to dismiss and a plea to the jurisdiction. In response, appellant filed various papers with the trial court clerk in which he falsely claimed that he himself is "The Court," including "orders" purportedly denying the defendants' motions. After appellant failed to appear at a hearing on the defendants' motions, the trial court dismissed the lawsuit and issued a final judgment on September 2, 2015. Subsequently, again referring to himself as "The Court," appellant filed a "Writ of Error" purporting to set aside the actual trial court's judgment and to instead award a judgment in his favor.

On April 19, 2017, appellant filed in the Hamilton County public records a lien against Slone for $21,936.20, stating that "this Common Law Lien Claim is being filed in good faith as a legal At-Law-Claim . . . upon and collectible out of an action filed against Justin Slone in the Hamilton County District Court . . . ."

The jury found appellant guilty of both counts and assessed punishment at seven years' imprisonment and a $5,000 fine for the retaliation count and two years' imprisonment and a $5,000 fine for the filing of a fraudulent financing statement count, with the sentences to run concurrently. The bill of costs provided that appellant owed

3

several fees, including: $40 for a district clerk fee, $4 for a jury reimbursement fee, $2 for a criminal indigent defense fee, and $25 for a time payment fee. This appeal followed.

## II.    DOUBLE JEOPARDY

By his first issue, appellant argues that retaliation and fraudulent filing of a financing statement are the same offense for double jeopardy purposes. The State agrees with appellant that the double jeopardy clause was violated and that one of the convictions should be vacated.

## A. Applicable Law

The constitutional guarantee against double jeopardy protects against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969); *see* U.S. CONST. amend. V; TEX. CONST. art. I, § 14. Where there are no underlying questions of fact, double jeopardy is a question of law we review de novo. *See Palacios v. State*, 511 S.W.3d 549, 585 (Tex. App.—Corpus Christi–Edinburg 2014, no pet.); *Vasquez v. State*, 22 S.W.3d 28, 31–32 (Tex. App.—Amarillo 2000, no pet.).

A multiple punishments claim can arise in two contexts:

(1)     the lesser-included offense context, in which the same conduct is punished twice; once for the basic conduct, and a second time for the same conduct plus more (for example, attempted assault of Y and assault of Y; assault of X and aggravated assault of X); and

(2)     punishing the same criminal act twice under two distinct statutes when the legislature intended the conduct to be punished only once (for example, causing a single death by committing both intoxication manslaughter and involuntary manslaughter).

*Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006). Courts begin a multiple-punishments analysis by determining whether the two offenses are the same under the *Blockburger* test. *Id.* (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). When the same conduct violates more than one penal statute, the test to be applied to

4

determine whether there are two offenses or only one is whether each statute requires proof of a fact that the other does not. *Blockburger*, 284 U.S. at 304.

Because of the fundamental nature of double-jeopardy protections, a double-jeopardy claim may be raised for the first time on appeal if: (1) the undisputed facts show that the double-jeopardy violation is clearly apparent on the face of the record and (2) enforcement of the usual rules of procedural default serves no legitimate state interest. *Langs*, 183 S.W.3d at 687. To determine whether a lesser offense is included within the proof necessary to establish the greater offense, we compare the statutory elements of the greater offense as they were alleged in the indictment with the elements of the lesser offense. *See Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007).

## B. Analysis

Here, the State alleged in its indictment that appellant (1) retaliated against Slone by unlawfully filing a fraudulent financing statement and (2) filed a fraudulent financing statement that he knew was materially false or groundless. *See* TEX. PENAL CODE ANN. §§ 36.06(a)(1), 37.101. In order to prove the allegation that appellant retaliated against Slone, consistent with the indictment, the State had to prove that appellant intentionally or knowingly harmed or threatened to harm Slone by filing a fraudulent lien against Slone "in retaliation for or on account of" Slone's service or status as a public servant. *See id.* § 36.06(a)(1)(A) ("A person commits an offense if the person intentionally or knowingly harms or threatens to harm another by an unlawful act . . . in retaliation for or on account of the service or status of another as a . . . public servant . . . ."). The fraudulent filing of a financing statement did not require proof of any additional element that the retaliation offense, as charged, did not also require. *See id.* § 37.101(a) ("A person commits an

5

offense if the person knowingly presents for filing or causes to be presented for filing a financing statement that the person knows . . . contains a false material statement; or . . . is groundless."). Accordingly, the two offenses were the same for double jeopardy purposes. *See Blockburger*, 284 U.S. at 304; *Bigon v. State*, 252 S.W.3d 360, 369 (Tex. Crim. App. 2008); *Langs*, 183 S.W.3d at 685; *see also Halay v. State*, No. 03-07-00327-CR, 2008 WL 5424095, at *13 (Tex. App.—Austin, Dec. 31, 2008, no pet.) (mem. op., not designated for publication) (concluding that appellant's convictions for filing of a fraudulent financing statement and retaliation violated double jeopardy); *Mortlan v. State*, No. 03-08-00029-CR, 2008 WL 5423167, at *1 (Tex. App.—Austin Dec. 30, 2008, pet. denied) (mem. op., not designated for publication) (same). Because retaliation is the more serious offense, we will vacate the conviction for fraudulent filing of a financing statement. *See Ex parte Cavazos*, 203 S.W.3d at 338; *see also Halay*, 2008 WL 5424095, at *13; *Mortlan*, 2008 WL 5423167, at *1.

As the State recognizes, the double jeopardy violation is "clearly apparent on the face of the record." *See Langs*, 183 S.W.3d at 687. And, under these circumstances, we conclude that enforcement of the usual rules of procedural default would serve no legitimate state interest. *See id.* Accordingly, appellant's failure to raise the double jeopardy issue at trial does not preclude our review.

We sustain appellant's first issue.[2]

---

[2] As a result of sustaining appellant's first issue, we need not address his fourth issue arguing that court costs were incorrectly assessed twice. *See* TEX. R. APP. P. 47.4.

6

### III. COURT'S ANSWER TO JURY'S QUESTION

By his second issue, appellant argues that the "trial court reversibly erred in failing to read in open court its answer, regarding concurrent versus consecutive sentencing, to the jury's note . . . ." *See* TEX. CODE CRIM. PROC. ANN. art. 36.27.

**A. Applicable Law**

Article 36.27 of the Texas Code of Criminal Procedure governs how a jury may communicate with the trial court during its deliberations. *See id.* In response to a question from the jury, a trial judge is required to reduce the answer to writing, submit it to the defendant and his counsel for an opportunity to object, and then read the answer to the jury in open court "unless expressly waived by the defendant." *See id.*

Here, the jury sent a note asking "will the sentences run consecutively or concurrently?" The record shows that trial court answered in writing that the sentences would run concurrently. TEX. PENAL CODE ANN. § 3.03 ("When the accused is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single criminal action, a sentence for each offense of which he has been found guilty shall be pronounced. Except as provided by Subsection (b), the sentences shall run concurrently."). However, the record is does not show that the trial court read the answer to the jury in open court as required by statute. *See* TEX. CODE CRIM. PROC. ANN. art. 36.27; *Smith v. State*, 513 S.W.2d 823, 829 (Tex. Crim. App. 1974).

**B. Analysis**

"The giving of additional instructions to a jury by the trial court without compliance with the statutes requiring such communication to be in open court and in the presence of the defendant constitutes reversible error." *Smith*, 513 S.W.2d at 829. "However, it is

7

incumbent upon a defendant to bring the easily correctable error to the judge's attention by objection or formal bill of exception or the acts of the trial court are presumed consistent with the statute." *Id.*; *see* TEX. R. APP. P. 33.1; *Hollins v. State*, 805 S.W.2d 475, 476 (Tex. Crim. App. 1991). Thus, when a defendant fails to object to noncompliance with article 36.27, his or her complaint is waived and procedurally defaulted on appeal. *Word v. State*, 206 S.W.3d 646, 652 (Tex. Crim. App. 2006); *see Green v. State*, 912 S.W.2d 189, 192–93 (Tex. Crim. App. 1995); *see also Rodriguez v. State*, No. 08-16-00118-CR, 2018 WL 3372637, at *14 (Tex. App.—El Paso July 11, 2018, pet. ref'd) (not designated for publication). Appellant did not object at the trial court or file a bill of exception; thus, this complaint has been waived. *See Word*, 206 S.W.3d at 652; *Smith*, 513 S.W.2d at 829.

Appellant argues that no objection was necessary to preserve error and cites *Marin v. State*. 851 S.W.2d 275, 279 (Tex. Crim. App. 1993). Appellant argues that article 36.27 states the trial court must comply with it "unless expressly waived" and, therefore, the error preservation requirement in this scenario needs to be revisited in light of *Marin*. For the purposes of analyzing error preservation, *Marin* established three categories of rights: "(1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request." *Id.* Appellant contends the "open court reading" requirement is a "waivable only" right that cannot be lost for failing to object, can only be waived on the record, and can be raised for the first time on appeal. *See id.* at 279–80. However, courts considering the issue after *Marin* have concluded that a defendant is required to make a timely objection to a trial court's failure to follow the statutory

8

procedures when responding to a jury question, and the Texas Court of Criminal Appeals has not revisited this preservation requirement as it applies to article 36.27. *See, e.g.*, *Word*, 206 S.W.3d at 651–652 & n.10 (noting its agreement with the long-standing rule that a defendant must preserve error by making a timely objection to the trial court's failure to follow the correct statutory procedures in responding to a communication by the jury); *Boatwright v. State*, 933 S.W.2d 309, 310–11 (Tex. App.—Houston [14th Dist.] 1996, no pet.) (concluding that appellant failed to properly preserve asserted error with regard to the trial court's alleged non-compliance with article 36.27 because appellant failed to object or file a formal bill of exception); *see also Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016) (recognizing that a defendant must preserve error by making a timely objection to the manner in which the trial court responds to a jury's request to read back testimony); *Marin*, 851 S.W.2d 278–79 (noting that the vast majority of evidentiary and procedural rules and rights fall under the third category, such that they must be implemented only upon the defendant's request or objection); *Carr v. State*, No. 05-02-01747-CR, 2003 WL 22456355, at *11 (Tex. App.—Dallas Oct. 30, 2003, pet. ref'd) (mem. op., not designated for publication) (recognizing that a defendant must object to deviations from article 36.27 in order to preserve any complaint for appellate review).

We overrule appellant's second issue.

### IV. COURT COSTS

By his third issue, appellant argues that some of the court costs assessed as provided by statute are "facially unconstitutional because they violate the Separation of Powers provision of the Texas Constitution . . . ." Specifically, appellant complains of the

district clerk fee, jury reimbursement fee, criminal indigent defense fee, and time payment fee.

## A. Applicable Law

A defendant may challenge the court costs assessed for the first time on appeal. *See Johnson v. State*, 423 S.W.3d 385, 391 (Tex. Crim. App. 2014); *Casas v. State*, 524 S.W.3d 921, 925 (Tex. App.—Fort Worth 2017, no pet.). Challenges to the constitutionality of a statute may be either facial attacks or as-applied challenges. *Johnson v. State*, 562 S.W.3d 168, 175 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (op. on reh'g); *see also Pugh v. State*, No. 03-18-00027-CR, 2018 WL 4039572, at *7 (Tex. App.—Austin Aug. 24, 2018, no pet.) (mem. op., not designated for publication). Except when First Amendment freedoms are involved, a facial challenge to a statute is a challenge to the statute in all of its applications, as opposed to a particular application. *Salinas v. State*, 523 S.W.3d 103, 106 (Tex. Crim. App. 2017).

The constitutionality of a criminal statute is a question of law we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). We begin with the presumption that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. *See id.* To prevail in a facial challenge, a defendant must establish that no set of circumstances exists under which the statute would be constitutional. *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015). The burden is on the defendant to establish that all applications of a statute are unconstitutional, and we make every reasonable presumption in favor of the statute's constitutionality, unless the contrary is clearly shown. *Id.*; *Davis v. State*, 519 S.W.3d 251, 257 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

If the statute turns the courts into "tax gatherers," then the statute violates the Texas Constitution's separation of powers provision. *See Salinas*, 523 S.W.3d at 106–07.

> [I]f the statute under which costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for legitimate criminal justice purposes, then the statute allows for a constitutional application that will not render the courts tax gatherers in violation of the separation of powers clause. A criminal justice purpose is one that relates to the administration of our criminal justice system.

*Peraza*, 467 S.W.3d at 517–18; *see Salinas*, 523 S.W.3d at 107; *see also* TEX. CONST. art. II, § 1. "What constitutes a legitimate criminal justice purpose is a question to be answered on a statute-by-statute/case-by-case basis." *Salinas*, 523 S.W.3d at 107; *Peraza*, 467 S.W.3d at 517.

Two types of fees assessed as court costs have been held to pass constitutional muster: (1) those meant to recoup costs that are necessary and incidental to a criminal trial; and (2) those that are allocated to be expended on any legitimate criminal justice purpose. *Moliere v. State*, 574 S.W.3d 21, 28–29 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd); *Allen v. State*, 570 S.W.3d 795, 804–05 (Tex. App.—Houston [1st Dist.] 2018, pet. granted); *Johnson*, 562 S.W.3d at 176–77; *see Peraza*, 467 S.W.3d at 510, 517–18. As to the second category, we determine whether the costs are expended for a legitimate criminal justice purpose "by what the governing statute says about the intended use of the funds, not whether the funds are actually used for a criminal justice purpose." *Salinas*, 523 S.W.3d at 107; *see State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 908 (Tex. Crim. App. 2011) (noting that courts are to "consider the statute only as it is written, rather than how it operates in practice"); *Casas*, 524 S.W.3d at 926 ("We determine whether an assessed

11

court cost is, indeed, a cost or an unconstitutional tax by reference to when the cost is collected, not when the money is spent.").

## B. District Clerk Fee

"A defendant convicted of an offense in a . . . district court shall pay for the services of the clerk of the court a fee of $40."  TEX. CODE CRIM. PROC. ANN. art. 102.005(a).  The statute states that "[t]he fee imposed is for all clerical duties performed by the clerk."  *Id.* art. 102.005(c) (listing the clerical duties the fee imposed covers); *see also id.* art. 2.21(a) (listing the duties of the district clerk in a criminal proceeding).

Appellant argues that the district clerk fee is unconstitutional because the statute fails to direct the funds to a legitimate criminal justice purpose.  We disagree.  "Article 102.005(c) shows that the fee falls within the first category of constitutional court-cost statutes:  it is collected to recoup costs expended in the trial of the case."  *Johnson v. State*, 573 S.W.3d 328, 339 (Tex. App.—Houston [14th Dist.] 2019, pet. filed) (quoting *Moliere*, 574 S.W.3d at 31); *see also Thornton v. State*, No. 05-17-00220-CR, 2018 WL 2773390, at *3 (Tex. App.—Dallas, June 11, 2018, no pet.) (mem. op., not designated for publication) (noting that the clerk's fee is "intended to be spent reimbursing the clerk for services listed in the statute attendant to a criminal court proceeding and . . . serves a legitimate criminal justice purpose"). Thus, "[t]he district clerk's fee is not an impermissible tax collected by the judiciary." *Johnson*, 573 S.W.3d at 339; *Moliere*, 574 S.W.3d at 31; *Davis v. State*, 519 S.W.3d 251, 257 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *see also Thornton*, 2018 WL 2773390, at *3.  We reject appellant's argument that the district clerk's fee is facially unconstitutional.

## C. Jury Reimbursement Fee

> A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to all other costs, a fee of $4 to be used to reimburse counties for the cost of juror services as provided by [§] 61.0015, Government Code.

TEX. CODE CRIM. PROC. ANN. art. 102.0045(a). This statute provides that the fee is deposited into the "jury service fund" and that the treasurer is to remit the collected fees to the comptroller, who then "shall deposit the fees in the jury service fund." *Id.* art. 102.0045(b).

The State "shall reimburse a county $34 a day" for the county's cost of paying each person who reports for jury service. TEX. GOV'T CODE ANN. § 61.0015(a), (b). The comptroller shall pay claims for reimbursement "from money collected under Article 102.0045, Code of Criminal Procedure, and deposited in the jury service fund." *Id.* § 61.0015(c). The funds collected under article 102.0045 and paid under § 61.005 are to "reimburse counties for the cost of juror services," which includes services relating to criminal juries. TEX. CODE CRIM. PROC. ANN. art. 102.0045(a); *see Johnson*, 562 S.W.3d at 179; *see also King v. State*, No. 11-17-00179-CR, 2019 WL 3023513, at *3 (Tex. App.—Eastland July 11, 2019, pet. filed) (mem. op., not designated for publication). Thus, the jury reimbursement fee is a recoupment of costs expended in the trial of the case, and the fee is also expended for legitimate criminal purposes. *See Peraza*, 467 S.W.3d at 517; *see also King*, 2019 WL 3023513, at *3.

Nevertheless, appellant argues that the jury service fee is unconstitutional because 90% of the jury service fee is purportedly deposited in the State general revenue fund and 10% of it could be deposited in a county or city general fund as a service fee. In support, appellant cites to § 133.058 of the local government code, a report from the

13

Texas Comptroller's website, and a study from the Office of Court Administration. *See* TEX. LOC. GOV'T CODE ANN. § 133.058(a) (permitting a municipality or county to "retain 10 percent of the money collected from fees as a service fee for the collection if the municipality or county remits the remainder of the fees to the comptroller within the period prescribed by [§] 133.055(a)"). Contrary to appellant's argument, we may not consider any of this in our analysis because we make our determination based on "what the governing statute says about the intended use of the funds, not whether the funds are actually used for a criminal justice purpose." *Salinas*, 523 S.W.3d at 107; *see Johnson*, 573 S.W.3d at 338; *see also King*, 2019 WL 3023513, at *4. Article 102.0045(a) expressly provides that the fee is "used to reimburse counties for the cost of juror services . . . ." TEX. CODE CRIM. PROC. ANN. art. 102.0045(a). Therefore, we conclude that the jury service fee is not facially unconstitutional and reject appellant's argument. *See Moliere*, 574 S.W.3d at 28–29, *Johnson*, 573 S.W.3d at 337; *see also King*, 2019 WL 3023513, at *3.

## D. Criminal Indigent Defense Fee

Section 133.107 of the local government code is titled "Fee for Support of Indigent Defense Representation" and provides that:

> (a) A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to other court costs, a fee of $2 to be used to fund indigent defense representation through the fair defense account established under [§] 79.031, Government Code.

> (b) The treasurer shall remit a fee collected under this section to the comptroller in the manner provided by Subchapter B. The comptroller shall credit the remitted fees to the credit of the fair defense account established under [§] 79.031, Government Code.

TEX. LOC. GOV'T CODE ANN. § 133.107. "The fair defense account is an account in the general revenue fund that may be appropriated only to: (1) the commission of the purpose of implementing this chapter; and (2) the office of capital and forensic writs for the purpose of implementing Subchapter B, Chapter 78." TEX. GOV'T CODE ANN. § 79.031.

Chapter 79 of the government code, entitled "Texas Indigent Defense Commission," governs the commission's role to "develop policies and standards for providing legal representation and other defense services to indigent defendants at trial, on appeal, and in postconviction proceedings." *Id.* § 79.034(a). The policies and standards include, among other things, "standards governing the availability and reasonable compensation of providers of indigent defense support services for counsel appointed to represent indigent defendants." *Id.* § 79.034(a)(9). "Indigent defense support services" means "criminal defense services that: (A) are provided by licensed investigators, experts, or other similar specialists, including forensic experts and mental health experts' and (B) are reasonable and necessary for appointed counsel to provide adequate representation to indigent defendants." *Id.* § 79.001(9). Two of our sister courts have read § 79.001(9) to include indigent defense representation, as that term is used in local government code § 133.107. *Johnson*, 573 S.W.3d at 338; *see also King*, 2019 WL 3023513, at *4. We adopt the same interpretation.

The foregoing provisions establish that the indigent defense fee is expended for a legitimate criminal justice purpose: the protection of an indigent defendant's right to counsel. *See Johnson*, 573 S.W.3d at 338; *see also King*, 2019 WL 3023513, at *4. As such, the statute is not facially unconstitutional.

15

However, similarly to the jury service fee, appellant cites the local government code, a report from the Office of Court Administration, and the Texas Comptroller's website and argues that the indigent defense fee is unconstitutional. As mentioned above, we do not consider these sources in our analysis; instead, we consider only the governing statute. *See Salinas*, 523 S.W.3d at 107; *Johnson*, 573 S.W.3d at 338. The statute at issue clearly states that the fee is "to fund indigent defense representation" and directs the fees collected to the fair defense account. TEX. LOC. GOV'T ANN. § 133.107; *see Moliere*, 574 S.W.3d at 28–29, *Johnson*, 573 S.W.3d at 337. We conclude the indigent defense fee statute is facially constitutional and reject appellant's argument.

**E. Time Payment Fee**

A person convicted of a felony or misdemeanor shall pay, in addition to all other costs, a fee of $25 if the person pays "any part of a fine, court costs, or restitution on or after the 31st day after the date on which a judgment is entered assessing the fine, court costs, or restitution." TEX. LOC. GOV'T CODE ANN. § 133.103(a). The statute allocates the fees collected in three ways. The treasurer is directed to: (1) send 50% of the fees collected under this section to the comptroller, who shall then deposit the fees to the credit of the general revenue fund; (2) deposit 40% of the fees in the general revenue account of the municipality; and (3) deposit the remaining 10% of the fees in the general fund of the county or municipality "for the purpose of improving the efficiency of the administration of justice." TEX. LOC. GOV'T CODE ANN. § 133.103(b)–(d).

The time payment fee does not in itself reimburse the county or the State for expenses incurred in connection with a criminal trial specifically or criminal justice resources generally. *Johnson*, 573 S.W.3d at 340; *see* TEX. LOC. GOV'T CODE ANN.

16

§ 133.103; *Peraza*, 467 S.W.3d at 517. It is simply a late fee assessed when a person convicted of a felony or a misdemeanor pays any fine, cost, or restitution more than thirty days after the judgment is entered assessing a court cost, fine, or restitution. *Johnson*, 573 S.W.3d at 340. Thus, we cannot uphold the time payment fee's constitutionality on the ground that its character "recoups expenses necessary or incidental to a criminal prosecution." *Id.*; *see Peraza*, 467 S.W.3d at 510, 517; *Moliere*, 574 S.W.3d at 28–29.

Alternatively, we look to whether § 133.103 allocates the funds to be used for something that is a legitimate criminal justice purpose. *See Salinas*, 523 S.W.3d at 107, 109 n.26; *Peraza*, 467 S.W.3d at 510. The time payment fee statute directs 90% of the fee to general revenue without limitation. *See* TEX. LOC. GOV'T CODE ANN. § 133.103(b), (d). Each time the district clerk collects the portion of the fee authorized by § 133.103(b), and (d), it is gathering general revenue not sufficiently related to a legitimate criminal justice purpose. *Johnson*, 573 S.W.3d at 340; *see Salinas*, 523 S.W.3d at 107, 109 n.26. We cannot uphold the constitutionality of funding when all the funds in the account go to general revenue, at least without a statutory directive that the funds be used for a legitimate criminal justice purpose. *Johnson*, 573 S.W.3d at 340; *see Salinas*, 523 S.W.3d at 109–10. Accordingly, we agree with appellant and our sister courts and conclude that § 133.103(b) and (d) are facially unconstitutional. *See Salinas*, 523 S.W.3d at 110; *see, e.g.*, *Dulin v. State*, __ S.W.3d __, __, No. 03-18-00523-CR, 2019 WL 3807866, at *2 (Tex. App.—Austin Aug. 14, 2019, pet. filed); *Kremplewski v. State*, __ S.W.3d __, __, No. 01-19-00033-CR, 2019 WL 3720627, at *3 (Tex. App.—Houston [1st Dist.] Aug. 8, 2019, pet. filed); *Johnson*, 573 S.W.3d at 340; *see also, e.g.*, *King*, 2019 WL 3023513, at *1, 5–6. However, we conclude that § 133.103(c), which allocates 10%

17

of the time payment fee to the general fund of the county or municipality for the purpose of improving the efficiency of the administration of justice in the county or municipality, is facially constitutional because it allocates the funds for a legitimate criminal justice purpose. *See Peraza*, 467 S.W.3d at 517; *Moliere*, 574 S.W.3d at 28–29; *Johnson*, 573 S.W.3d at 340.

## F. Conclusion

We sustain appellant's third issue in part, deleting $22.50 from the time payment fee assessed because the statute that authorizes this portion of the time payment fee is facially unconstitutional. We overrule the remainder of appellant's third issue.

## V. BILL OF COSTS

By his fifth issue, appellant argues the fine included in the bill of costs must be deleted. The State agrees that this is error and that it would be proper for this Court to modify the bill of costs.

While fines are punitive and a part of a convicted person's sentence, court costs are non-punitive and intended to recoup judicial resources expended in connection with the trial of the case. *Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011). A bill of costs must contain "items of cost." TEX. CODE CRIM. PROC. ANN. art. 103.001(b). As such, a fine cannot be included in the bill of costs. *See, e.g.*, *Williams v. State*, 495 S.W.3d 583, 591 (Tex. App.—Houston [1st Dist.] 2016, pet. dism'd).

Here, the jury assessed a $5,000 fine for each of appellant's convictions, and the bill of costs included a $5,000 fine. Because a fine is punitive and cannot be included in the bill of costs, we sustain appellant's fifth issue and delete the fine from the bill of costs.

18

*See id.* Appellant remains obligated to pay the fine as reflected in the judgment of conviction for his retaliation offense.

## VI.  CONCLUSION

We reverse the trial court's judgment convicting appellant of fraudulent filing of a financing statement and render a judgment of acquittal as to that count.  *See* TEX. R. APP. P. 43.2(c).  We modify the trial court's judgment convicting appellant of retaliation by deleting the $5,000 fine included in the bill of costs and reducing the time payment fee assessed to $2.50, and we affirm the judgment as modified.  *See* TEX. R. APP. P. 43.2(b).

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
21st day of November 2019.