**Judgment Vacated and Opinion filed June 27, 2019**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00053-CV

## IN THE INTEREST OF G.X.H., JR. AND B.X.H., CHILDREN

**On Appeal from the 313th District Court
Harris County, Texas
Trial Court Cause No. 2017-04498J**

## O P I N I O N

This accelerated appeal arises from a final decree in a suit in which termination of the parent-child relationship was at issue. *See* Tex. Fam. Code Ann. § 109.002(a-1). The trial court terminated the parental rights of R.L.C. (Mother) and G.X.H. (Father) with respect to their sons, Gregory and Brandon.[1] The trial court also appointed the Texas Department of Family and Protective Services (the Department) to be the boys' managing conservator.

On appeal, Mother and Father contend the decree is void because the trial on

---

[1] We use pseudonyms or initials to refer to the children, parents, and other family members involved in this case. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

the merits did not commence before a statutory deadline. Alternatively, they assert the evidence is legally and factually insufficient to support termination. The Department counters that the trial on the merits did commence before the deadline, and even if it did not, the decree is not void for various reasons.

We agree the decree is void. Therefore, without reaching the merits of the sufficiency challenges, we vacate the decree and dismiss the underlying case.

## DISMISSAL DEADLINE

Effective September 1, 2017, the trial court in a parental termination case automatically loses jurisdiction if the trial on the merits does not begin by the deadline imposed by section 263.401(a) of the Texas Family Code. Section 263.401(a) states:

> (a) Unless the court has commenced the trial on the merits or granted an extension under Subsection (b) or (b-1), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court's jurisdiction over the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child is terminated and the suit is automatically dismissed without a court order. Not later than the 60th day before the day the suit is automatically dismissed, the court shall notify all parties to the suit of the automatic dismissal date.

It is undisputed the trial court did not grant an extension under Subsection (b) or (b-1). Accordingly, the dates relevant to our analysis are: (1) the date the court rendered a temporary order appointing the Department as temporary managing conservator; (2) the first anniversary of that date; (3) the date of the following Monday; and (4) the date the trial on the merits began.

The trial court signed an Order for Protection of a Child in an Emergency on September 21, 2017, the day suit was filed, appointing the Department as the boys'

2

temporary managing conservator until a full adversary hearing was held. The full adversary hearing was held on October 5, 2017, after which the trial court signed an order appointing the Department as Gregory's and Brandon's temporary managing conservator.

Assuming the first order started the section 263.401(a) clock, the first anniversary of that date was Friday, September 21, 2018. The first Monday after that date was Monday, September 24, 2018. The trial on the merits began on October 17, 2018.

The trial on the merits did not commence by the deadline imposed by section 263.401(a), and no extension was granted under section 263.401(b) or (b-1). As a result, the trial court's jurisdiction terminated and the suit was automatically dismissed on September 24, 2018. The decree, which was signed after the trial court's jurisdiction had terminated, is void.

## THE DEPARTMENT'S ARGUMENTS

The Department offers three arguments why the decree is not void. First, it contends the trial on the merits actually began when the trial court considered evidence in February 2018 of Father's paternity. Second, the Department says, a pleading it filed after the automatic dismissal date "was sufficient to confer jurisdiction on the court." Third, on behalf of Gregory and Brandon, the Department asserts section 263.401(a) is unconstitutional facially and as applied. The boys' attorney ad litem joins the Department's constitutional arguments.

## I.   The trial on the merits began in October 2018, not February 2018.

The first question we face is one of statutory construction: what does "commenced the trial on the merits" mean as used in section 263.401(a)? That question usually arises in the following context: the trial court called the case for

trial on or before the dismissal date, a witness briefly testified, then the trial court recessed the trial until after the dismissal deadline. Parents on appeal have argued such proceedings before the dismissal deadline were a sham. We recently encountered such an argument but did not reach its merits because the appellants had not preserved the complaint for appellate review. *In re P.N.T.*, No. 14-18-01115-CV, __ S.W.3d __, 2019 WL 2426692, at *2 (Tex. App.—Houston [14th Dist.] June 11, 2019, no pet. h.). Our sister courts have considered whether an appointed lawyer's failure to file a motion to dismiss in that situation constituted ineffective assistance of counsel. They have refused to find the lawyer to have provided ineffective assistance when the claimed error is based on the "unsettled law" of what constitutes commencement of the trial on the merits. *See In re P.M.W.*, 559 S.W.3d 215, 221 (Tex. App.—Texarkana 2018, pet. denied); *In re D.I.*, No. 12-16-00159-CV, 2016 WL 6876503, at * 5 (Tex. App.—Tyler 2016, no pet.) (mem. op.); *G.M. v. Tex. Dep't of Family & Protective Servs.*, No. 03-15-00825-CV, 2016 WL 3522131, *3–*4 (Tex. App.—Austin June 23, 2016, no pet.) (mem. op.).

This case is different, because there is no suggestion the trial court called the case for trial, as that phrase is typically used, on or before the dismissal date. Rather, the Department contends the trial court "commenced the trial on the merits" in February 2018, when it considered evidence of Father's paternity.

## A. Statutory construction

Our objective in statutory construction is to give effect to the Legislature's intent. We ascertain intent from the plain meaning of the words used in the statute, because "the best indicator of what the Legislature intended is what it enacted." *Sw. Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 404 (Tex. 2016). Several presumptions guide the intent analysis. We presume the Legislature intended that (1) the statute would comply with the United States and Texas Constitutions, (2) the entire statute

4

would be effective, (3) the result would be "just and reasonable," (4) the result would be feasible of execution, and (5) public interest is favored over any private interest. Tex. Gov't Code Ann. § 311.021. Courts may consider many factors in construing a statute, including (1) the object sought to be obtained, and (2) the circumstances under which the statute was enacted. Tex. Gov't Code Ann. § 311.023(1)–(2); *Wal-Mart Stores, Inc. v. Forte*, 497 S.W.3d 460, 466 (Tex. 2016).

We presume the Legislature selected statutory words, phrases, and expressions deliberately and purposefully and was just as careful in selecting the words, phrases, and expressions that were included or omitted. *In re A.L.M.-F.*, No. 17-0603, __ S.W.3d __, 2019 WL 1966623, at *5 (Tex. May 3, 2019). We do not consider those words and phrases in isolation; rather, "we consider the statute as a whole, giving effect to each provision so that none is rendered meaningless or mere surplusage." *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016).

## B. "Trial on the merits"

The Department asserts "commenced the trial on the merits" should be construed according to its common usage as dictated by the Code Construction Act. Tex. Gov't Code Ann. § 311.011(a). The Code Construction Act also states, "Words or phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." *Id.* § 311.011(b). The Department contends "commenced" means "began" and "the trial on the merits" means "formal judicial examination of evidence and substantive determination of all or part of the claims for relief in the suit." Using those definitions, the Department asserts the trial on the merits began when the trial court considered evidence in February 2018 regarding Father's paternity of Gregory and Brandon, because determination of paternity was part of the relief the Department requested in its original petition.

Determination of parentage is governed by the Uniform Parentage Act, codified in chapter 160 of the Family Code. That chapter imposes its own procedures to adjudicate parentage. *See generally* Tex. Fam. Code Ann. §§ 160.601–.637. The result of such a proceeding is an "order adjudicating parentage." *Id.* § 160.636.

For several reasons, we disagree that a proceeding to adjudicate paternity conducted **as part of** a suit for termination of parental rights is "the trial on the merits" in the termination suit. First, we look to the language the Legislature chose. Chapter 160 creates a "proceeding to adjudicate parentage." Tex. Fam. Code Ann. ch. 160, subtitle G. If the Legislature intended the deadline in section 263.401(a) to be satisfied by the trial court's conducting a proceeding to adjudicate parentage, it could have said so. Instead, it used the phrase "the trial on the merits."

Second, a hallmark of a proceeding to adjudicate parentage is the prohibition of a jury. "The court shall adjudicate paternity of a child without a jury." *Id.* § 160.632.[2] By contrast, a suit for termination of parental rights generally may be tried by a jury. Tex. Fam. Code Ann. § 105.002.[3] Characterizing a proceeding to adjudicate parentage as part of "the trial on the merits" would conflict with a party's constitutional right to a jury trial in a suit to terminate parental rights. Tex. Const. art. I, § 15 ("The right of trial by jury shall remain inviolate."). Such a characterization violates the first presumption of statutory construction—that the Legislature intended section 263.401(a) to comply with the Texas Constitution. Tex. Gov't Code Ann. § 311.021(1).

Third, construing the conducting of a proceeding to adjudicate parentage as

---

[2] Though section 160.632 appears to apply only to adjudication of paternity, section 160.106 makes the provisions relating to determination of paternity apply equally to a determination of maternity. Tex. Fam. Code Ann. § 160.106.

[3] As of 2010, Texas was one of only five states permitting or requiring jury trials in termination suits. *A.L.M.-F.*, 2019 WL 1966623, at *1 & n.14.

"commenc[ing] the trial on the merits" would frustrate the purpose of the dismissal deadline in section 263.401(a). That section is part of "a scheme adopted by the 1997 Legislature to ensure that children would remain under the temporary care of [the Department] for no longer than one year, with an extension not to exceed 180 days beyond that" under certain circumstances. *In re Neal*, 4 S.W.3d 443, 447 (Tex. App.—Houston [1st Dist.] 1999, orig. proceeding [mand. denied]). If conducting a proceeding to adjudicate parentage sufficed as commencing the trial on the merits, then trial could be continued once that proceeding is concluded, theoretically indefinitely, without running afoul of the dismissal deadline in section 263.401(a). We will not presume the Legislature intended to thwart its own efforts to limit the amount of time a child spends under the Department's care. Such a construction would also afford parties in cases where paternity must be determined an unfair advantage over parties in cases in which paternity need not be determined (for example, where paternity has already been established or only the mother's parental rights are at issue). If paternity need not be determined, a proceeding to adjudicate parentage would not be held and, therefore, would not stop the clock of the dismissal deadline.

We need not decide precisely what "commenced the trial on the merits" means under section 263.401(a). We hold only that it does not mean conducting a proceeding to adjudicate parentage.

## II. The Department could not "re-confer" jurisdiction on the trial court.

Next, the Department suggests a permanency report it filed on September 28, 2018, four days after the automatic dismissal date, re-conferred jurisdiction on the trial court. A "permanency progress report" is a statutory requirement in proceedings concerning children in the Department's care. *See* Tex. Fam. Code Ann. § 263.303. Section 263.303 states in relevant part, "Not later than the 10th day before the date

set for each permanency hearing before a final order is rendered, the department shall file with the court and provide to each party, the child's attorney ad litem, the child's guardian ad litem, and the child's volunteer advocate a permanency progress report unless the court orders a different period for providing the report." *Id.* § 263.303(a).

The Department relies on *Leach v. Brown*, 292 S.W.2d 329 (Tex. 1956). *Leach* involved a suit about mineral royalty interests. The trial court sustained the defendants' pleas in abatement and dismissed the case, and the court of appeals affirmed the dismissal. *See id.* at 330. Then, the plaintiff filed a document entitled "first amended original petition" in the same cause number as the dismissed action. The trial court again dismissed the case, and the court of appeals again affirmed. *See id.* The question for the Supreme Court of Texas was whether the "first amended original petition" invoked the jurisdiction of the trial court. *See id.* at 330–31. The high court said yes, noting that petition "contained all the requisites of an original petition." The trial court should have "looked to the substance of things" and considered the "first amended original petition" in the dismissed case to be an original petition in a new case. *See id.* at 331.

We find *Leach* distinguishable. First, it did not involve a parental termination case with a statutorily dictated automatic dismissal that divested the trial court of jurisdiction. Second, a permanency progress report is not a petition, original or otherwise. In any event, *Leach* does not suggest the "first amended original petition" resurrected the dismissed case, only that it started a new case. Even assuming the permanency progress report could be considered to be an original petition in a new termination suit, the new suit would be governed by new deadlines, and the trial, which began less than three weeks after the report was filed, was surely premature.

We hold the permanency progress report filed four days after the case was

8

automatically dismissed did not resurrect the trial court's jurisdiction.

## III. Section 263.401(a) is not unconstitutional.

Finally, the Department contends section 263.401(a) is unconstitutional because it violates three protections of the U.S. and Texas Constitutions: equal protection, due process, and separation of powers.

### A. Legal principles

We review the constitutionality of a statute de novo, *see Stockton v. Offenbach*, 336 S.W.3d 610, 614–15 (Tex. 2011), beginning with the presumption the statute is constitutional. Tex. Gov't Code Ann. § 311.021(1); *Sax v. Votteler*, 648 S.W.2d 661, 664 (Tex. 1983). There are two types of challenges to constitutionality: as-applied and facial. "[U]nder the hierarchy of constitutional inquiry, 'the usual judicial practice" is to determine an as-applied challenge before addressing a facial challenge." *King Street Patriots v. Tex. Democratic Party*, 521 S.W.3d 729, 732 (Tex. 2017) (quoting *Bd. of Trs. of the State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484–85 (1989)).

An as-applied challenge concedes the statute is generally constitutional but claims it operates unconstitutionally as to the challenger because of his circumstances. *Johnson v. State*, 562 S.W.3d 168, 175 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (op. on reh'g); *In re P. RJ E.*, 499 S.W.3d 571, 576 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (op. on reh'g). We must evaluate the statute as it has been applied against the challenger. *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011); *Johnson*, 562 S.W.3d at 175. As the scope of such a challenge is necessarily narrow, we do not entertain hypothetical claims or consider the potential impact of the statute on anyone other than the challenger. *Lykos*, 330 S.W.3d at 910.

A facial challenge claims a statute, by its terms, always operates unconstitutionally. *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 702 (Tex. 2014). In analyzing a facial challenge to a statute's constitutionality, we consider the statute as written, rather than as it operates in practice. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000). We may also consider legislative history and reasonable constructions of the statute by the agency charged with implementing it. *Id.* The challenger must establish that "no set of circumstances exists under which the statute would be valid." *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015). Because a facial challenge attacks a statute's validity in all circumstances, it is "the most difficult challenge to mount successfully." *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992).

## B.     Preservation of error

In his reply brief, Father contends the Department waived its constitutional arguments because it did not raise them in the trial court. As the prevailing party in the trial court, the Department was not obligated to raise arguments below showing why the judgment was correct. *See Texas Ear Nose & Throat Consultants, PLLC v. Jones*, 470 S.W.3d 67, 95 n.31 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding appellants waived argument by not raising it in trial court as ground for overturning portion of judgment against them, but as cross-appellees, "waiver would not apply" to their similar argument concerning portion of judgment in their favor).

The San Antonio Court of Appeals held as much with respect to a constitutional argument. *See City of San Antonio v. Winkenhower*, 875 S.W.2d 388 (Tex. App.—San Antonio 1994, writ denied). The appellees' final argument in support of the trial court's judgment was an attack on the constitutionality of the relevant statute. Rejecting the appellant's argument that the appellees had waived their constitutional challenge, the court of appeals wrote:

10

> [T]his complaint is reviewable by our court even though it was not argued to the trial court below. In raising this constitutional challenge, appellees do not complain about an error of the trial court. Instead, they raise this reply point as an alternative position to seek affirmance of the judgment. Had they sought a modification of the judgment or a reversal of the judgment as applied to them, as one would in a cross-point, preservation of error would have been necessary.

*Id.* at 391.

Like the appellees in *City of San Antonio*, the Department does not seek modification of the trial court's judgment, nor does it seek more relief than the judgment affords it. Rather, the Department is offering another basis on which the judgment can be affirmed—namely, by finding the statute unconstitutional, we would review the merits of the case and could affirm on that basis.

## C.   Application

We begin with what is not in dispute. First, the Department recognizes the legitimacy of section 263.401(a)'s purposes, which it describes as "to expedite termination action brought by the Department, return children to their parents or guardians in an expeditious manner, and to help achieve permanence for the children affected by these kinds of suits." Second, the Department does not appear to complain of the existence of a deadline or its length of one year. Indeed, that deadline has been in place for more than 20 years. Act of May 31, 1997, 75th Leg., R.S., ch. 1022, § 90, 1997 Tex. Gen. Laws 3733, 3768 (codified at Tex. Fam. Code § 263.401); *see Neal*, 4 S.W.3d at 447. But under prior versions of section 263.401(a), a party seeking to enforce the dismissal deadline was required to file a motion to dismiss and obtain a ruling in order to preserve error. *See P.N.T.*, 2019 WL 2426692, at *2. The Department complains only of the consequences of a trial

11

court's failure to meet that deadline: automatic dismissal and loss of jurisdiction.[4] Accordingly, we limit our analysis to that portion of section 263.401(a).

### 1. Equal protection

The U.S. Constitution provides that no state shall deny any person within its jurisdiction the equal protection of the laws, and the Texas constitution provides that all free men have equal rights. U.S. Const. amend. XIV, § 1; Tex. Const. art. I, § 3. These standards are "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

An equal protection challenge to a statute involves a two-step analysis. We first determine the level of scrutiny required, and then apply that level of scrutiny to the statute. *Cannady v. State*, 11 S.W.3d 205, 215 (Tex. Crim. App. 2000). When the classification created by a state regulatory scheme neither infringes upon fundamental rights or interests nor burdens an inherently suspect class, equal protection analysis requires only that the classification be rationally related to a legitimate state interest. *Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 559 (Tex. 1985). That is, even when the purpose of a statute is legitimate, equal protection analysis still requires a determination that the classifications drawn by the statute are rationally related to the statute's purpose. *Sullivan v. Univ. Interscholastic League*, 616 S.W.2d 170, 172 (Tex. 1981). "Under the rational basis test of *Sullivan*, similarly situated individuals must be treated equally under the statutory classification unless there is a rational basis for not doing so." *Whitworth v. Bynum*, 699 S.W.2d 194, 197 (Tex. 1985). The challenging party bears the burden to negate "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Alobaidi v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 243 S.W.3d 741,

---

[4] The Department's brief does not clearly delineate its facial challenges from its as-applied challenges.

747 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). The Department acknowledges section 263.401(a) is subject only to rational basis review.

The Department asserts the relevant class of people in this equal-protection analysis is children in a suit affecting the parent-child relationship (SAPCR). A suit by the Department to terminate parental rights is a type of SAPCR. Other SAPCRs include suits concerning conservatorship (chapter 153 of the Family Code), child support (chapter 154), modification of conservatorship and/or child support (chapter 156), adjudication of parentage (chapter 160), termination (chapter 161), and adoption (chapter 162). The Department contends section 263.401(a) unfairly treats children in a governmental termination proceeding differently than children in other SAPCRs by mandating automatic dismissal of only the governmental termination suits.

We disagree with the Department's characterization of the relevant class of people. Children removed from their home and in the Department's care constitute a unique class. They are not similarly situated as, for example, children whose divorced parents are litigating custody or child support, children who live in stable homes but have one parent whose parentage is being adjudicated or whose parental rights are sought to be terminated, or newborn children whose parents voluntarily relinquish their parental rights so they may be adopted.

In any event, the classification drawn by section 263.401(a) between children in governmental termination suits and children in other SAPCRs is rationally related to the statute's purposes. Arguably the most reasonable way to ensure timely resolution of termination suits is to impose a deadline for their completion. Section 263.401(a) does not go that far; it imposes a deadline only for commencement of the trial on the merits. The automatic-dismissal provision of section 263.401(a) in particular is rationally related to the section's purposes. By making dismissal

automatic, section 263.401 ensures a child will not be denied timely resolution and permanency by the failure, intentional or not, of the Department, the child's parents, or any other stakeholder to file a motion to dismiss, as was previously required.

The Department points out how easy it would be to trigger the automatic-dismissal provision through a clerical error by the trial court or the parties. But that is true of any deadline, even a jurisdictional deadline like perfecting an appeal. A statute is not unconstitutional simply because the consequences of violating the statute are harsh. The Department also lists hypothetical situations purportedly showing the unconstitutionality of the automatic dismissal under section 263.401(a)—essentially a parade of horribles. For example:

> Another circumstance that undermines the purported purpose of the statute occurs in a case where a court loses its subject matter jurisdiction over a suit, but the Department has evidence that a child faces a continuing danger. . . . [T]he Department would have an obligation to refile the suit. A new suit would mean a new statutory timeline and additional delay in the proceedings which, before the expiration of [the] jurisdictional deadline under [section] 263.401, were on the cusp of completion.
>
> . . .
>
> A bigger problem is the uncertainty created by the jurisdictional deprivation. A very real possibility exists that someone will collaterally attack a final termination judgment or the subsequent adoption and conservatorship judgment. This attack could occur at any time. Suppose a child is with a foster family that turns into an adoptive family. A successful collateral attack years down the road would mean that the child, who may not know the biological parents (or conservators) must be returned to them. Alternatively, the child or the adoptive family (now caretakers) must file a new termination suit, likely without the Department's assistance as the child may no longer be in danger, at great expense and frustration. These types of scenarios are possible. The risks are real.

No doubt those risks are real, but that is not the standard for concluding a

statute is unconstitutional facially or as applied. To show the statute is facially unconstitutional, the Department must establish that "no set of circumstances exists under which the statute would be valid." *Peraza*, 467 S.W.3d at 514. These hypothetical circumstances do not satisfy that burden. In an as-applied challenge, we must evaluate the statute as it has been applied against Gregory and Brandon. *See Lykos*, 330 S.W.3d at 910; *Johnson*, 562 S.W.3d at 175. We may not entertain hypothetical claims or consider the potential impact of the statute on anyone other than the challenger. *Lykos*, 330 S.W.3d at 910.

### 2. Due process

The U.S. Constitution prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. The Texas Constitution states, "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Tex. Const. art. I, § 19. Because the Department has not suggested otherwise, we presume the due course of law analysis under the Texas Constitution mirrors the due process analysis under the U.S. Constitution. *Reynoso v. Dibs US, Inc.*, 541 S.W.3d 331, 338 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

A violation of substantive due process occurs when the government deprives individuals of constitutionally protected rights by an arbitrary use of power. *Id.* Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property. *Id.* at 339 (citing *Carey v. Piphus*, 435 U.S. 247, 260 (1978)). Due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 930 (Tex. 1995).

In a due process analysis, the Supreme Court of Texas looks to the balancing

15

test laid out in *Matthews v. Eldridge*, 424 U.S. 319 (1976). *See In re K.S.L.*, 538 S.W.3d 107, 114 (Tex. 2017). That test requires the court to balance three elements: (1) the private interests at stake, (2) the government's interest supporting the challenged procedure, and (3) the risk that the procedure will lead to erroneous decisions. *Id.* (citing *Matthews*, 424 U.S. at 335).

The *K.S.L.* court described the private and public interests in a parental termination case as follows:

> The private interest of the parents in termination cases is indisputably "a commanding one." The State's interest in the welfare of the child means that its interest in a just decision is largely coextensive with the parents' interests. But we have repeatedly emphasized that the State, as parens patriae for the child, has an interest in seeing these cases decided not only fairly but also expeditiously. "Parents and children [] have an interest in resolving termination proceedings as expeditiously as reasonably possible."

*K.S.L.*, 538 S.W.3d at 114–15 (footnotes omitted; brackets in original). We would add the private interest of the children in termination cases is also "indisputably 'a commanding one.'"

We balance those interests against the risks that the automatic dismissal in section 263.401(a) will lead to erroneous decisions. The Department identified some of those risks, as discussed above. We note, though, that each of the Department's examples presumes the correct result would have been termination of parental rights. We have no basis to know what percentage of cases automatically dismissed under section 263.401(a) should have, had they gone to trial, resulted in termination of parental rights. Likewise, we have no basis to know what percentage should have resulted in retention of parental rights. On this record, we simply do not know how much weight the risk of erroneous decisions should have in the *Matthews* analysis.

Like the court in *K.S.L.*, we believe existing Texas procedure reduces that risk,

whatever its size. *See id.* at 115. First, section 263.401(a) requires a trial court to give notice of the dismissal date at least 60 days in advance. Tex. Fam. Code Ann. § 263.401(a) ("Not later than the 60th day before the suit is automatically dismissed, the court shall notify all parties to the suit of the automatic dismissal date."). Here, the trial court notified the parties of the automatic dismissal date of September 24, 2018 nearly a year in advance, in an order signed October 5, 2017. The trial court again notified the parties of the dismissal date in orders signed February 21, 2018 and May 16, 2018. Moreover, the Department acknowledged the automatic dismissal date on each of three permanency reports it filed before that date.

Second, dismissal under section 263.401(a) is without prejudice, so the Department may refile its petition for termination. *Tex. Dep't of Family & Protective Servs. v. Dickensheets*, 274 S.W.3d 150, 161 (Tex. App.—Houston [1st Dist.] 2008, no pet.).The fact that it would have to incur the time and expense of a second termination proceeding does not change the fact that it is entitled to a second bite at the apple—an opportunity not usually available if a deadline is missed. The state may not prosecute a person after the statute of limitations expires. A would-be appellant may not appeal an adverse judgment after the deadline to perfect the appeal. A court usually may not correct an erroneous judgment after plenary power expires. But the Department may re-petition for termination.

Applying the *Matthews* balancing test, we conclude the Department has not shown section 263.401(a) violates due process.

### 3. Separation of powers

The Texas Constitution separates the powers of government as follows:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another; and those which are Judicial to

another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein permitted.

Tex. Const. art. II, § 1. This section ensures the powers granted to one governmental branch may be exercised by only that branch, to the exclusion of the other branches. *Ex parte Lo*, 424 S.W.3d 10, 28 (Tex. Crim. App. 2013) (op. on reh'g). Violation of separation of powers usually takes one of two forms: (1) one branch of government assumes or is delegated a power more properly attached to another, or (2) one branch unduly interferes with another branch so that the second branch cannot effectively exercise its constitutionally assigned powers. *Dickensheets*, 274 S.W.3d at 156.

Any time the Legislature promulgates a statute, it exercises a power properly attached to itself. *See id.* However, a constitutional problem arises when the Legislature interferes with the core functioning of the judicial process in a field constitutionally committed to the control of the courts. *See id.*

The *Dickensheets* court considered the Department's argument that section 263.401(a) violates the separation of powers clause because "it invades the exclusive power of a district or county attorney to represent [the Department] in civil court." *Id.* at 155. The Department in that case likened section 263.401(a) to the Speedy Trial Act, a statute the Court of Criminal Appeals had concluded violated the separation of powers clause. *See id.* Our sister court rejected the Department's argument, noting (1) section 263.401(a) made allowances for additional time needed, which the Speedy Trial Act did not do; (2) dismissal under section 263.401(a) was without prejudice, unlike dismissal under the Speedy Trial Act. *See id.* at 159–61. Both of those distinctions led the court to conclude section 263.401(a) did not unduly interfere with the prosecutor's function. *Id.* at 161.

In this case, the Department contends section 263.401(a) unduly interferes

not with the prosecutor's function but with the trial court's ability to render a valid judgment. It also says section 263.401(a) "substantially increases the risk of arbitrary, unwanted or child-endangering decisions." The Department cites *Ex parte Lo*'s analysis of the constitutionality of Government Code section 402.010, which required a court to notify the attorney general of a constitutional challenge to a statute and wait 45 days before ruling the statute was unconstitutional. The Court of Criminal Appeals concluded section 402.010 was unconstitutional because it violated the separation of powers clause: "[T]he 45-day time frame [in section 402.010] is a constitutionally intolerable imposition on a court's power to enter a final judgment and a violation of separation of powers." *Ex parte Lo*, 424 S.W.3d at 30. Though that holding has since been abrogated by a constitutional amendment,[5] the Department urges us to apply the same reasoning.

We do not believe *Lo*'s reasoning applies in this case. Section 263.401(a) does not delay or prevent a court from entering a judgment. It requires the trial on the merits in a governmental suit to terminate parental rights—a proceeding well understood to be time-critical—to commence roughly a year after the proceeding began. We agree with the *Dickensheets* analysis. The one-year deadline is extendable by up to 180 days, a full fifty percent of the original time period. And dismissal under section 263.401(a) is without prejudice, so the Department may bring and the trial court may preside over a second suit. Section 263.401(a) no more interferes with a court's ability to render a final judgment than does a statute of limitations or a deadline to perfect an appeal.

---

[5] The 45-day notice requirement in section 402.010 was subsequently included in a constitutional amendment, so the propriety of that requirement is no longer in question. Tex. Const. art. V, § 32; *see In re K.L.*, 553 S.W.3d 703, 706 n.3 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (recognizing abrogation of holding in *Lo*).

### 4. Conclusion on constitutionality

The Department has not demonstrated section 263.401(a) violates the constitutional protections of equal protection, due process, or separation of powers. Therefore, it has not satisfied its burden to overcome the presumption that section 263.401(a) is constitutional.

## CONCLUSION

We lack jurisdiction to address the merits of an appeal from a void judgment. We have jurisdiction only to determine that the judgment is void and make appropriate orders based on that determination. *Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 623 (Tex. 2012) (per curiam); *Helix Energy Solutions Group, Inc. v. Howard*, 452 S.W.3d 40, 45 (Tex. App.—Houston [14th Dist.] 2014, no pet.). When a trial court's void judgment is appealed, we have jurisdiction to declare the judgment void and dismiss the underlying case. Tex. R. App. P. 43.2(e); *see Goodman-Delaney v. Grantham*, 484 S.W.3d 171, 175 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

We vacate the trial court's decree and dismiss the underlying case.


/s/     Ken Wise
        Justice

Panel consists of Justices Wise, Jewell, and Hassan.